```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
ALVIN D. ROBINSON,              )
                                )
        Plaintiff,              )
                                )
    v.                          )        1:23-cv-87
                                )
GUILFORD COUNTY SHERIFF'S       )
OFFICE, and DANNY H. ROGERS,    )
individually and in his         )
capacity as Sheriff of Guilford )
County,                         )
                                )
        Defendants.             )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendants' Motion to Dismiss, (Doc. 16), treated as a motion summary judgment following the Magistrate Judge's order, (Doc. 21). Defendants have filed a brief in support of their motion to dismiss, (Doc. 17), and a supplemental brief responding to the order, (Doc. 25). Plaintiff has responded to the motion and order, (Doc. 29), and Defendants have replied, (Doc. 30). For the reasons stated herein, Defendants' motion will be granted.

## I.  FACTUAL BACKGROUND

The following facts are construed in the light most favorable to Plaintiff and are uncontested unless otherwise noted. See Scott v. Harris, 550 U.S. 372, 378 (2007).

Pro se Plaintiff Alvin D. Robinson was employed by Defendant Guilford County Sheriff's Office ("GCSO") as a part-time Deputy Sheriff when GCSO announced a COVID-19 Testing Disciplinary Policy and Procedure ("Testing Policy"), (Defs.' Pol'y (Doc. 17-1)), effective October 28, 2021. (Compl. (Doc. 2) at ¶¶ 4-5.) The Testing Policy stated that "the Sheriff's Office is not mandating vaccinations for its employees." (Defs.' Pol'y (Doc. 17-1) at 4 (emphasis in original).) [1] Instead, it established that "employees who choose not to be vaccinated, however, are required to be tested for COVID-19 on a weekly basis." (Id. (emphasis in original).) The Testing Policy also announced that "[r]eligious and medical exemptions are generally not applicable to the mandatory testing requirement." (Id.)

Plaintiff objected to the Testing Policy "based upon his sincerely held religious beliefs" and informed GCSO that "[i]t is a sin against my God-given conscience to allow unwanted intrusions into, extractions from, and restrictions to my body which is the temple of the Holy Spirit." (Compl. (Doc. 2) ¶ 6.) Corresponding with GCSO, Plaintiff stated "I am requesting that the reasonable accommodations be that I be allowed to continue

---

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

to report to work at Guilford County Sheriff's Office . . . without any disciplinary actions related to the Guilford County COVID-19 testing policy." (Pl.'s Correspondence Nov. 17, 2021 (Doc. 17-2).)[2]

Responding to Plaintiff's request, GCSO Legal Advisor James Secor informed Plaintiff that "[w]e do not accept your logic on this issue. Hence, the masking requirement will stand." (Defs.' Correspondence Nov. 18, 2021 (Doc. 17-2).) Further, Secor stated that "[y]our refusal to comply with the much less intrusive requirements for weekly testing and mask wearing put other employees, and the public we serve, at a greater health risk. That increased risk is, without doubt, 'an undue burden'." (Id.) Thus, Plaintiff was instructed to "comply with the Sheriff's requirements for weekly testing and masking." (Id.)

On the same day, Plaintiff received a "Non-disciplinary Letter of Performance Counseling" signed by GCSO Captain D. R. Pruitt. (Defs.' Letter Nov. 18, 2021 (Doc. 17-3).) This letter

_____

[2] In his complaint, Plaintiff similarly stated that he "requested therein that defendant GCSO accommodate his religious beliefs by allowing him to continue to work as he had been prior to implementation of the Policy on grounds that allowing him to do so would not pose an undue hardship to defendant." (Compl. (Doc. 2) ¶ 6). Therefore, while Plaintiff later stated that he "included a list of reasonable accommodations for my exempt status," (Pl. Correspondence Nov. 30, 2021 (Doc. 17-4)), this court finds that until November 30, 2021, Plaintiff had only requested that he be permitted to work without being subject to the testing requirement.

stated that Plaintiff had not been in compliance with the
Testing Policy and further noncompliance "will result in the
next step in the disciplinary process." (Id.) Later that month,
Plaintiff met with Defendant GCSO Sheriff Danny Rogers. (Compl.
(Doc. 2) ¶ 9.) During this meeting, "Sheriff Rogers told
[P]laintiff that he did not want to have to let [P]laintiff go
because [P]laintiff was a good employee," but "later that day"
Plaintiff was "suspended from duty without pay . . . for
violating the Policy." (Id.)

Plaintiff then "attempted to appeal his suspension through
an email" to Secor. (Id. ¶ 10.) In this email, Plaintiff stated
that his previously correspondence had "included a list of
reasonable accommodations for my exempt status." (Pl.'s
Correspondence Nov. 30, 2021 (Doc. 17-4) at 1.) After restating
his religious objections, Plaintiff then explained that "if I
were to exhibit COVID-19 symptoms, I am not opposed to getting
tested to confirm illness at that time." (Id. at 3.) Moreover,
Plaintiff indicated that he was "not opposed to wearing a mask
when I am acting as a medical first responder in my law
enforcement capacity." (Id.) However, Plaintiff maintained that
"mask wearing outside of the aforementioned emergency
circumstances and weekly COVID-19 testing is the government
imposing a different religious practice (daily and weekly

- 4 -

rituals) on me which goes against my sincerely held religious beliefs." (Id.)

On December 3, 2021, Secor responded to Plaintiff's email stating that "there is no legal or factual basis for reversing [GCSO's] position on the COVID-related testing and mask-wearing mandates." (Defs.' Correspondence Dec. 3, 2021 (Doc. 17-5) at 1.) The letter agreed that religious beliefs must be interpreted "broadly," but also maintained that religious freedom objections are not "limitless." (Id.) The letter identified "evidence that you, in the past, have behaved in manners inconsistent with your stated belief." (Id. at 2.) The letter also explained that "the business necessity of the GCSO's mandatory testing and mask wearing requirement is manifest" because employees "engage in close, personal contact with the public and other agency employees." (Id.) As such, Plaintiff "cannot perform those specific duties remotely from a laptop at home nor can [he] perform those duties safely if the GCSO capitulates to [his] request to reject weekly COVID testing and daily mask wearing." (Id.) (emphasis in original).

After Plaintiff "continued to refuse to submit to weekly testing," (Compl. (Doc. 2) ¶ 12) GCSO First Lieutenant E.M. Cox sent Plaintiff a "Statement of Charges and Recommended Discipline" that recommended termination. (Id.) Plaintiff

appealed this recommendation and articulated "that the scriptural authority upon which he relied was Romans 14:23b: 'For whatever does not proceed from faith is sin.'" (Id. ¶ 13.) Sheriff Rogers denied the appeal on December 13, 2021, and "upheld the termination of [P]laintiff's employment for failure to abide by the mandatory testing requirement." (Id. ¶ 15.)

Plaintiff brings this action against Defendants GCSO and Sheriff Danny H. Rogers in his individual capacity and official capacity as Sheriff of Guilford County. (Id. at 1.) Plaintiff asserts Title VII claims for religious discrimination in violation of 42 U.S.C. § 2000e et seq., (id. ¶¶ 25–33), and 42 U.S.C. § 1983 claims for violations of the Free Exercise Clause, (id. ¶¶ 34–40).

## II. **PROCEDURAL HISTORY**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 31, 2021. (EEOC Charge (Doc. 2-1) at 1–4.) Plaintiff received his right to

sue letter on October 22, 2022. (EEOC Right to Sue (Doc. 2-1) at 6-9.) Plaintiff then filed his complaint on January 30, 2023.[3]

Defendants moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (Doc. 16).) On January 11, 2024, Plaintiff had not responded to Defendants' motion, and the Magistrate Judge ordered Plaintiff to file a Notice of Intent to Proceed. (Order (Doc. 21) at 1.) The order also recognized that Defendants "attached various documents, some of which may be outside the pleadings." (Id.) Therefore, the Magistrate Judge determined that under Federal Rule of Civil Procedure 12(d), Defendants' motion will be treated as one for summary judgment. (Id. at 1-2.) Plaintiff then timely informed this court of his intent to proceed. (Pl.'s Notice of Intent to Proceed (Doc. 22).) Because the order

---

[3] Plaintiff attached both his EEOC charge and right to sue letter to his complaint. (See Doc. 2-1.) While it appears that Plaintiff may have filed his complaint more than 90 days after receiving the letter, see Davis v. Va. Commonwealth Univ., 180 F.3d 626 (4th Cir. 1999), Plaintiff did not identify whether he received his letter by mail or email and this court cannot determine the form of Plaintiff's correspondence. Using the established Fourth Circuit presumption that Plaintiff received the mailed notice within three days of the letter's issuance, see Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 321 (4th Cir. 2011) (unpublished table decision), Plaintiff has timely filed his complaint. Moreover, Defendants do not challenge Plaintiff's timeliness and agree that the complaint was timely filed because the deadline to file was a Saturday, thus permitting Plaintiff to file by January 30th. (Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 17) at 1 n.1.) Therefore, this court determines that Plaintiff has timely filed his complaint.

treating the motion as one for summary judgment permitted the
parties to "present any additional material," (Order (Doc. 21)
at 1-2), Defendants filed supplemental briefing to support the
motion, (Defs.' Suppl. Br. in Supp. of Mot. to Dismiss Compl.
and/or Mot. for Summ. J. ("Defs.' Suppl. Br.") (Doc. 25)).

Plaintiff then responded to Defendants' motion, (Pl.'s
Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (Doc. 29)). In
this response, Plaintiff addressed three statements from
Defendants. (See Pl.'s Resp. (Doc. 29) at 1-6; Br. in Supp. of
Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Br.") (Doc. 17).)
Plaintiff also stated that "pursuant to Rule 41(a)(2) of the
Federal Rules of Civil Procedure," Plaintiff "moves for the
Voluntary Dismissal without Prejudice of this action against all
defendants under the condition that the Court would grant me one
(1) year from the date of the entry of the Court's order to
refile my action against all defendants." (Pl's Resp. (Doc. 29)
at 7. (emphasis in original).) Defendants replied to Plaintiff's
response. (Defs.' Reply Br. in Supp. of Mot. to Dismiss Compl.
("Defs.' Reply") (Doc. 30).) Defendants "strenuously oppose[d]"
Plaintiff's request, arguing that it was both procedurally
defective and lacking substantive basis to dismiss without
prejudice. (Id. at 6-7.)

- 8 -

Defendants' motion is ripe and ready for ruling. A hearing is not necessary to resolve the motion.

## III. <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 12(d), courts have discretion to convert a Rule 12(b)(6) motion into one for summary judgment. <u>Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.</u>, 109 F.3d 993, 996 (4th Cir. 1997). A motion to dismiss pursuant to Rule 12(b)(6) is not converted into a motion for summary judgment by the mere submission or service of extraneous materials. <u>Id.</u> (considering issue in context of voluntary dismissal under Federal Rule of Civil Procedure 41(a)). However, on a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the court opts to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." <u>Id.</u>; <u>see</u> <u>Gay v. Wall</u>, 761 F.2d 175, 177 (4th Cir. 1985) (holding that the non-moving party has the right to file counter affidavits or pursue reasonable discovery). Generally, parties are on notice of a potential Rule 12(d) conversion if they are aware that materials outside the pleadings are before the court. <u>Gay</u>, 761 F.2d at 177.

Case 1:23-cv-00087-WO-JEP   Document 31   Filed 12/19/25   Page 9 of 47

Here, all parties were notified of the potential conversion. The Magistrate Judge's order gave notice to all parties of the intent to convert the motion and then provided the opportunity to present additional information pertinent to the motion. (Order (Doc. 21) at 2.) Both Plaintiff and Defendants filed responsive pleadings after receiving this order, (see Defs.' Suppl. Br. (Doc. 25); Pl.'s Resp. (Doc. 29); Defs.' Reply (Doc. 30)). Neither Plaintiff nor Defendants objected to converting the motion. As a result, this court finds that conversion is appropriate and that the issues before the court may be decided based upon the pleadings and evidence submitted. See Bullock v. United States, 176 F. Supp. 3d 517, 522–23 (M.D.N.C. 2016).

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for

trial. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts"; the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted) (quoting Fed. R. Civ. P. 56(e)). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible in evidence" and that any affidavits or evidence used to support or oppose a motion are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." <u>See</u> Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. <u>Anderson</u>, 477 U.S. at 255. However, there must be more than a factual dispute, the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477 U.S. at 248. A

dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a party is proceeding pro se, his filings are "to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the principles calling for "special judicial solicitude" in viewing pro se filings "do[] not transform the court into an advocate." United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotation marks and citation omitted); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). If the non-movant fails to meet his burden, summary judgment must be granted. Celotex, 477 U.S. at 322.

## IV.  **ANALYSIS**

In his complaint, Plaintiff names as defendants the Guilford County Sheriff's Office and Sheriff Rogers in both his individual and official capacities. (Compl. (Doc. 2).) As an initial matter, this court agrees with Defendants that GSCO lacks the capacity to be sued as an entity. (Defs.' Br. (Doc. 17) at 6-7.) As a governmental agency, state law determines a

- 12 -

sheriff's office capacity to be sued. Efird v. Riley, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004) (citing Avery v. Burke Cnty., 660 F.2d 111, 113-14 (4th Cir. 1981)). The Fourth Circuit has held that "[u]nder North Carolina law, police departments cannot be sued as entities." Smith v. Munday, 848 F.3d 248, 256-57 (4th Cir. 2017). Accordingly, Defendants' motion as to Plaintiff's claims against GCSO as an entity will be granted, and GCSO will be dismissed as a Defendant.

This court next addresses Sheriff Rogers as a Defendant in his individual and official capacities. (Compl. (Doc. 2).) Because Plaintiff is proceeding without counsel, this court liberally construes Plaintiff's pleadings to assert the following: (1) a Title VII claim against Sheriff Rogers, in his official capacity as Plaintiff's employer, for failing to grant

- 13 -

Plaintiff's religious accommodation,[4] (2) a § 1983 claim against

Sheriff Rogers in his individual capacity for violating

Plaintiff's First Amendment rights established by the Free

Exercise Clause,[5] and (3) a municipal liability claim against

---

[4] Title VII does not permit suits against supervisors in their individual capacities. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998). However, "in North Carolina, each county's sheriff is an 'employer' within the meaning of Title VII and must be named as a defendant in a Title VII suit." Efird v. Riley, 342 F. Supp. 2d 413, 420 (M.D.N.C. 2004); see also Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008) ("[U]nder North Carolina law, a sheriff's deputy 'is an employee of the sheriff, not the county.'" (quoting Clark v. Burke Cnty., 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994))). As Defendants identify, it is "well-established" that "a cause of action may exist as to a local Sheriff in his official capacity," (Defs.' Rep. (Doc. 30) at 1-2). This court agrees. See, e.g., King v. McMillan, 594 F.3d 301, 308-09 (4th Cir. 2010) ("In sum, state law demarcations of particular offices cannot be used to cut off the (federal) Title VII rights of state and local employees."). Because Plaintiff, proceeding pro se, named Sheriff Rogers in his official capacity as a Defendant, (Compl. (Doc. 2), this court finds that Plaintiff's Title VII claim may proceed against Sheriff Rogers in his official capacity as Plaintiff's employer.

[5] Despite Defendants' argument that Plaintiff's "allegations do not mention an individual capacity claim," (Defs.' Br. (Doc. 17) at 19) (citation omitted), this court finds that Plaintiff stated his second cause of action when he contended that "the actions of the defendants GCSO, by and through Sheriff Rogers and its employees, were under color of law." (Compl. (Doc. 2) ¶ 36.) Construed liberally, this court finds that Plaintiff has stated a claim against Sheriff Rogers in his individual capacity under § 1983 by arguing that Sheriff Rogers acted under color of law. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (emphasis in original) (citing Monroe v. Pape, 365 U.S. 167 (1961))).

- 14 -

Sheriff Rogers in his official capacity for implementing and executing the Testing Policy which violated Plaintiff's First Amendment rights.[6] This court will grant Defendants' motion because Defendants are entitled to judgment as a matter of law, and it will deny Plaintiff's request for voluntary dismissal without prejudice.

A.    **Title VII**

Under Title VII, an employer cannot "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions,

---

[6] Where individual capacity suits consider an officer's deprivation of federal rights while acting under color of state law, see Graham, 473 U.S. at 165, official capacity suits are "treated as suits against the municipality." Davison v. Randall, 912 F.3d 666, 688 (4th Cir. 2019), as amended (Jan. 9, 2019) (quoting Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469 (4th Cir. 2013)). Municipalities are liable "when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Santos, 725 F.3d at 470 (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

Plaintiff contends that the Testing Policy "forced [P]laintiff to choose between violating his sincerely held religious beliefs or being fired." (Compl. (Doc. 2) ¶ 39.) Plaintiff cited Monell in his response and argued that "local governments and individual local government officials indeed can be sued for federal constitutional violations resulting from their official policies." (Pl.'s Resp. (Doc. 29) at 2-3 (citing Monell, 436 U.S. at 659).) Because Plaintiff has named Sheriff Rogers in his official capacity as a Defendant, argued that the Testing Policy caused his alleged injury, and cited to the appropriate authority for municipal liability, this court determines that Plaintiff has stated a claim for Monell liability. See Monell, 436 U.S. at 692-94.

or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII defines religion as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

Courts in the Fourth Circuit "employ a burden shifting scheme" where a plaintiff must "first establish a prima facie claim." E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008). To establish a prima facie claim, a plaintiff must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Id. (citation and internal quotation marks omitted). If established, the burden then shifts to the employer, who must "demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was

not provided because it would have caused an undue hardship."[7]

Id. (emphasis in original). This court finds that Defendants

could not have accommodated Plaintiff without suffering an undue

---

[7] Title VII has different legal standards for failure to accommodate and disparate treatment claims. See Hall v. Sheppard Pratt Health Sys., Inc., 155 F.4th 747, 751 (4th Cir. 2025) (explaining that "[e]mployees may sue under Title VII using either a 'disparate treatment' or 'failure to accommodate' theory"); see also Barnett v. Inova Health Care Servs., 125 F.4th 465, 471 (describing the disparate treatment standard). Plaintiff alleges a "failure to provide religious accommodation." While Plaintiff does not allege a theory of disparate treatment, (see Compl. (Doc. 2) at 9–11), his response stated that "[t]here was another part-time deputy at the time who, because he was not absolutely needed to work, was advised to not work during that same time period." (Pl.'s Resp. (Doc. 29) at 5.) Therefore, to the extent Plaintiff alleges disparate treatment through a comparator, this court finds that Plaintiff failed to establish that the comparator was similarly situated.

To state a claim for disparate treatment, Plaintiff must "produce evidence of particular comparators who were similarly situated," which can include individuals who "dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Hall v. Sheppard Pratt Health Sys., Inc., 749 F. Supp. 3d 532, 549 (D. Md. 2024) aff'd, 155 F.4th 747 (4th Cir. 2025) (alteration omitted) (quoting Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019)). Plaintiff does not identify any similarities in job duties, tenure, responsibilities, or qualifications. Plaintiff does not state this deputy's religion or explain why "he was not absolutely needed to work." (See Pl.'s Resp. (Doc. 29) at 5.) Plaintiff also does not articulate Defendants' stated reason for advising this individual not to work. (See id.) Therefore, to the extent Plaintiff intended to state a disparate treatment claim, this court finds that summary judgment is appropriate.

hardship and will therefore grant summary judgment to Defendants on Plaintiff's Title VII claim.

### i. **Plaintiff's Prima Facie Claim**

When evaluating the "bona fide religious belief" element of a prima facie claim, courts must consider whether the "belief is (1) sincerely held and (2) religious in nature." Barnett v. Inova Health Care Servs., 125 F.4th 465, 470 (4th Cir. 2025) (citing United States v. Seeger, 380 U.S. 163, 185 (1965)). The "first prong" of sincerity evaluates "an adherent's good faith in the expression of [his] religious belief." Id. (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)). This good-faith inquiry examines whether beliefs "are held as a matter of conscience" or "are animated by motives of deception and fraud." Id. (quoting Patrick, 745 F.2d at 157). The "second prong" of religious in nature "limits" a court's inquiry to whether "the beliefs professed are, in the claimant's own scheme of things, religious." Id. (cleaned up) (quoting Patrick, 745 F.2d at 157-58). It is not an employer's duty, "nor ours as a court, to questions the correctness or even the plausibility of [a plaintiff's] religious understandings." E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 142 (4th Cir. 2017). Courts cannot evaluate whether a plaintiff, "in seeking to protect his

- 18 -

religious conscience, has drawn the line in the right place."
Id.

This court finds that genuine disputes of material fact
preclude summary judgment on the first prong of sincerity. As
recognized by the Fourth Circuit, "the inquiry into sincerity is
'almost exclusively a credibility assessment' and 'can rarely be
determined on summary judgment.'" Barnett, 125 F.4th at 470
(quoting Kay v. Bemis, 500 F.3d 1214, 1219 (10th Cir. 2007)).
Plaintiff has sufficiently alleged his sincere belief in the
Christian faith. As "an ordained, Christian minister," who
worked with both GCSO and the Greensboro Fire Department,
(Compl. (Doc. 2) ¶ 4), Plaintiff asserted "that the Holy Spirit
convicted him to refuse to comply with the Policy," (id. ¶ 13).
Plaintiff also provided "the scriptural authority upon which he
relied" to voice his objections. (Id.) At this stage, Plaintiff
has provided "sufficient evidence" to support that his "beliefs
are sincerely held" and in good faith. Consol Energy, 860 F.3d
at 142.

Beyond credibility, this court also finds that material
facts remain in dispute. Specifically, this court finds material
whether Plaintiff's requested accommodation on November 30,
2021, differed from Plaintiff's request on November 17, 2021,
and whether either request deviated from pre-Testing Policy

- 19 -

practices. Defendants argue that "Plaintiff's opposition to the testing/mask-wearing mandates is not religious but rather personal, secular, and based on his own perceived opinion of the weight of the medical evidence supporting those protective practices." (Defs.' Br. (Doc. 17) at 10.) Additionally, the difference between the two requests "substantially undermines the sincerity of his religious opposition to the testing/masking requirements. Why? Because if he believed these measures were so wholly offensive to his beliefs, he would not have offered this concession." (Id. at 15–16.)

Defendants' objections implicate the consistency of Plaintiff's requests. Courts have previously maintained that certain inconsistent statements or actions "dilute" the sincerity of one's religious-based objections. See Schmidt v. Tchrs. Ins. & Annuity Ass'n of Am., No. 3:23-CV-00881-FDW-DCK, 2024 WL 3380152, at *3 (W.D.N.C. July 11, 2024) (determining that a plaintiff failed to "plausibly allege any evidence of adherence to a religious tenant" after the evidence revealed "that he was able to receive a vaccine for the flu a mere fourteen months prior to his objection to a vaccine for Covid-19"); see also DeVore v. Univ. of Kentucky Bd. of Trs., 118 F.4th 839, 846–47 (6th Cir. 2024), cert. denied, 145 S. Ct. 1903 (2025) (explaining that a plaintiff failed to establish a

"conflict between the Policy and any religious objections" after first stating that "repeated testing can damage the first line of defense God created," then stating there "was no invasiveness regarding the saliva test").

While Plaintiff first objected to the Testing Policy by requesting to "be allowed to continue to report to work . . . as I have since December 2013 without any disciplinary actions," (Pl.'s Correspondence Nov. 17, 2021 (Doc. 17-2) at 2), and then later stated that "I am not opposed to wearing a mask when I am acting as a medical first responder in my law enforcement capacity," (Pl.'s Correspondence Nov. 30, 2021 (Doc. 17-3) at 3), such statements are not inherently contradictory. Plaintiff explained on November 30, 2021, that he believed wearing a mask "outside of the aforementioned emergency circumstances" amounted to "daily and weekly rituals" that he viewed as a "different religious practice" imposed by GCSO. (Id.) According to his complaint, Plaintiff sought permission on November 30, 2021, "to continue to work as he had prior to the Policy, self-monitoring for symptoms." (Compl. (Doc. 2) ¶ 10). Plaintiff also argues that he made a similar request on November 17, 2021, when he asked "to continue to work as he had been prior to the implementation of the Policy." (Id.) Moreover, Defendants responded to Plaintiff's November 30, 2021, request by stating

- 21 -

that Plaintiff previously "willingly and regularly abided by certain grooming standards and requirements to wear protective equipment" including "protective breathing apparatus." (Defs.' Correspondence Dec. 3, 2021 (Doc. 17-5) at 2.)

Therefore, this court is unable to determine whether Plaintiff's request to only wear a mask in emergency circumstances and only test when he became symptomatic deviated from the pre-COVID requirements of GCSO policy. Without a clear baseline for practices prior to the Testing Policy, this court cannot evaluate the consistency of Plaintiff's requests. As such, this court cannot grant summary judgment on the first prong of sincerity.

Defendants also challenge the sincerity of Plaintiff's beliefs by contending that "Plaintiff fails to explain how testing or masking violate those Biblical references" that form Plaintiff's objections. (Defs.' Br. (Doc. 17) at 10). As a matter of religious conviction, this court cannot analyze whether Plaintiff's stated beliefs justify his objections. As the Supreme Court explained, "[t]he validity of what [a plaintiff] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question . . . the truth of [a plaintiff's] concepts. But these are inquiries foreclosed to Government." Seeger, 380 U.S. at 184.

Notwithstanding that beliefs may change, certain "convictions which some might find 'incomprehensible' or 'incorrect' come within the meaning of 'religious belief.'" Welsh v. United States, 398 U.S. 333, 339 (1970) (quoting Seeger, 380 U.S. at 184–85).

This court is limited to evaluating whether Plaintiff has articulated a religious belief or secular preference. See Dachman v. Shalala, 9 F. App'x 186, 192 (4th Cir. 2001). To do so, this court can consider whether Plaintiff's objections changed over time. While the parties do not dispute that Plaintiff consistently objected to wearing a mask "on a routine basis," (Defs.' Br. (Doc. 17) at 10; Pl.'s Correspondence Nov. 30, 2021 (Doc. 17-3) at 3), the parties dispute whether Plaintiff's second request amounted to a "concession," (Defs.' Br. (Doc. 17) at 16), and whether either the first or second request deviated from pre-Policy practices. This court is therefore precluded from granting summary judgment on Plaintiff's prima facie claim.

## ii. <u>Defendants' Undue Hardship</u>

Even accepting that Plaintiff stated his prima facie claim, this court will grant summary judgment to Defendants because Defendants could not have accommodated Plaintiff without suffering undue hardship. In Groff v. DeJoy, the Supreme Court

determined that undue hardship "is shown when a burden is substantial in the overall context of an employer's business." 600 U.S. 447, 468 (2023). Rejecting the notion that undue hardship means "more than a de minimis cost," the Supreme Court explained that "an employer must show that that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Id. at 470 (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 83 n.14 (1977)). Further, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Id. at 470–71 (internal quotations and alterations omitted). An employer's burden is not limited to economic factors, see Hall v. Sheppard Pratt Health Sys., Inc., 155 F.4th 747, 752-53 (4th Cir. 2025), and courts can consider the impact on coworkers so long as the asserted hardship is not "attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice." Groff, 600 U.S. at 472.

Defendants have shown that Plaintiff's requests would have imposed undue hardship. Corresponding with Plaintiff on December

3, 2021, GCSO Legal Advisor Secor explained that Plaintiff's "duties as Deputy Sheriff require close, personal contact with the public and other agency employees." (Defs.' Correspondence Dec. 3, 2021 (Doc. 17-5) at 2.) Further, Secor stated that Plaintiff "cannot perform those specific duties remotely from a laptop at home" and that "the negative impact of accommodating [Plaintiff's] request would be substantial — i.e., unnecessarily exposing our customers and your fellow GCSO employees to the risk of COVID infection." (Id.)

Recently, the Fourth Circuit determined that a medical employer articulated undue hardship in the vaccination context after denying a request to mask and test weekly when it presented evidence of detriment to patients, increased risk to coworkers, and an inability to perform job duties remotely. See Hall, 155 F.4th at 753-55. Other courts have consistently found that "the possibility of an unvaccinated individual getting others sick [is] a non-speculative risk that a court may consider when performing an undue hardship analysis." Dodson v. Lutheran Vill. at Millers Grant, Inc., No. CV EA-23-169, 2025 WL 1474319, at *7 (D. Md. May 22, 2025) (collecting cases). Such cases "are indeed legion" with respect to organizations that provide medical or first response services. Lumley v. Town of Knightdale, No. 5:23-CV-663-FL, 2024 WL 3678348, at *5 (E.D.N.C.

Aug. 6, 2024). The "through-line" in each case is that the "increased risks of getting others sick, even vaccinated individuals, can be considered in deciding an undue hardship under Title VII." Bordeaux v. Lions Gate Ent., Inc., 703 F. Supp. 3d 1117, 1136 (C.D. Cal. 2023), aff'd, No. 23-4340, 2025 WL 655065 (9th Cir. Feb. 28, 2025). Courts adopt this through-line because public entities cannot function safely without adequate staffing, see Gantt v. City of N. Charleston, No. 2:22-CV-04224-DCN-MHC, 2024 WL 4486184, at *11 (D.S.C. July 25, 2024), report and recommendation adopted, No. 2:22-CV-04224-DCN, 2024 WL 4343708 (D.S.C. Sept. 30, 2024), first responders interact closely with coworkers and the public, see Marucci v. Greater Baltimore Med. Ctr., Inc., No. 23-CV-0510-ABA, 2025 WL 860137, at *6 (D. Md. Mar. 18, 2025), and the appearance of not prioritizing safety could cause reputational harm and "erode[] public trust." Hall v. Sheppard Pratt Health Sys., Inc., 749 F. Supp. 3d 532, 546 (D. Md. 2024), aff'd, 155 F.4th 747 (4th Cir. 2025).

The distinct facts of this case reinforce the legal principles discussed above and demonstrate Defendants' undue hardship. Critically, the Testing Policy did not mandate COVID vaccination. (Defs.' Pol'y (Doc. 17-1) at 4.) Rather, GCSO permitted employees to refuse vaccination and instead test

- 26 -

weekly and wear a mask. (Id.) These practices often are the accommodation requests rejected by other employers. See Hall, 155 F.4th at 754; Gantt, 2024 WL 4486184, at *11–12; Marucci, 2025 WL 860137, at *5–7; Antredu v. Mass. Dep't of Youth Servs., 729 F. Supp. 3d 76, 81 (D. Mass. 2024). By permitting testing and masking in lieu of vaccination, Defendants did not promote a "vaccination culture," see Caudill v. N. Carolina Symphony Soc'y, Inc., 750 F. Supp. 3d 531, 561 (E.D.N.C. 2024), nor did they "rely upon the services of first responders from neighboring local government units, including of individuals who were in fact unvaccinated," while simultaneously requiring its own employees to vaccinate. Lumley, 2024 WL 3678348, at *5. Instead, Defendants gave its employees the choice to either vaccinate or test weekly and wear a mask, and this universal policy provided "no alternative employment option inside the GCSO to offer Plaintiff as an accommodation." (Defs.' Suppl. Br. (Doc. 25) at 14).

In light of the Fourth Circuit's recent decision in Hall, this court finds that the "specific circumstances" of Plaintiff's job prohibited remote work, (Defs.' Correspondence Dec. 3, 2021 (Doc. 17-5) at 2), and an exemption from testing would have placed both the workplace and the public at risk. "It is beyond cavil" that the health and safety of a workplace "is

- 27 -

of absolute importance." <u>Beickert v. New York City Dep't of Educ.</u>, No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023). This concern is elevated in a setting where the job duties include "close personal (and sometimes physical) interaction with members of the public, detainees, and arrestees." (Defs.' Suppl. Br. (Doc. 25) at 14). This concern reaches its apex when the public trust is shaped by safe interactions. Because Defendants' undue hardship implicates "the potential loss of human life," (<u>id.</u>), this court will grant summary judgment to Defendants on Plaintiff's Title VII claim.[8]

**B.** **<u>Section 1983</u>**

This court also finds that Defendants are entitled to qualified immunity from Plaintiff's Free Exercise claims.

---

[8] Plaintiff states in his response that Defendants "never held the required interactive process to gain further information of how they could accommodate my religious exemption." (Pl.'s Resp. (Doc. 29) at 5.) Plaintiff does not cite any authority which states that Defendants are "required" to engage in an interactive process. While required in other accommodation contexts, an interactive process is not mandatory in the context of religious discrimination. <u>See</u> <u>Marucci</u>, 2025 WL 860137, at *6 n.9. To the extent that "bilateral cooperation" is required, <u>see</u> <u>Ansonia Bd. of Educ. v. Philbrook</u>, 479 U.S. 60, 69 (1986), this requirement only exists "in defining the employer's accommodation obligation." <u>Id.</u> This "obligation" is met when an employer "demonstrates that it has offered a reasonable accommodation to the employee." <u>Id.</u> However, an employer is not required to offer a reasonable accommodation, so long as it demonstrates that it would suffer an undue hardship. <u>Groff</u>, 600 U.S. at 457. Here, because Defendants would have suffered an undue hardship, this court finds that Defendants were not required to have engaged in an interactive process.

Plaintiff asserts a claim against Defendants pursuant to 42 U.S.C. § 1983, and qualified immunity shields government officials "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). This immunity provides officials with "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013). Courts analyze qualified immunity through a two-step process. Atkinson v. Godfrey, 100 F.4th 498, 504 (4th Cir. 2024). First, a plaintiff must prove that a constitutional violation occurred. See id. Second, a defendant must articulate whether the asserted constitutional right was clearly established at time of the asserted violation. See id. Either of the two prongs may be addressed first "in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This court finds that Defendants did not violate a clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right.'" Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). This right cannot be

defined "at a high level of generality." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011). The right instead must be "infringed at a 'high level of particularity,'" <u>Atkinson</u>, 100 F.4th at 505 (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 250–51 (4th Cir. 1999)), considering "the specific context of the case, not as a broad general proposition," <u>Mullenix</u>, 577 U.S. at 12 (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)).

Read in the specific context of this case, Plaintiff asserts that Defendants violated his right to work in a law enforcement capacity exempt from a weekly testing and mask wearing policy because of his religious beliefs. (<u>See</u> Compl. (Doc. 2) at 1.) To determine whether the law clearly established that Defendants' conduct was unconstitutional, this court must consider decisions from the United States Supreme Court, the Fourth Circuit Court of Appeals, and the North Carolina Supreme Court. <u>Atkinson</u>, 100 F.4th at 506 (citing <u>Edwards</u>, 178 F.3d at 251)). Absent such authority, this court may also consider "a consensus of cases" from other jurisdictions. <u>Id.</u> (quoting <u>Owens ex rel. Owens v. Lott</u>, 372 F.3d 267, 280 (4th Cir. 2004)). This court finds that Plaintiff's asserted right was not clearly established at the time Defendants terminated Plaintiff.

The Supreme Court has recognized that "[t]he right to practice religion freely does not include liberty to expose the

- 30 -

community . . . to communicable disease or . . . to ill health or death." Prince v. Massachusetts, 321 U.S. 158, 166-67 (1944). Applying Prince, the Fourth Circuit concluded that a state statute "requiring vaccinations as a condition of admission to school does not unconstitutionally infringe [plaintiff's] right to free exercise." Workman v. Mingo Cnty. Bd. of Educ., 419 F. App'x 348, 354 (4th Cir. 2011). More recently, in the context of COVID-19, the Supreme Court identified that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020). The North Carolina Supreme Court, citing earlier decisions from "the start of the twentieth century," noted that "public welfare may sometimes justify vaccination mandates" while "purely individualized medical decisions, on the other hand, do not implicate such concerns." Happel v. Guilford Cnty. Bd. of Educ., 387 N.C. 186, 198, 913 S.E.2d 174, 187 (2025) (citing State v. Hay, 126 N.C. 999, 1001, 35 S.E. 459, 460 (1900); Hutchins v. School Committee, 137 N.C. 68, 71, 49 S.E. 46, 47 (1904)). While each case presents unique facts and variations on the legal issues between religion and vaccines, none of the decisions from the Supreme Court, the Fourth Circuit, or the North Carolina Supreme Court provide "fair warning," see Atkinson, 100 F.4th at 508, that a governmental

- 31 -

entity's vaccination requirement, much less a testing and masking requirement, violates the Free Exercise Clause. Therefore, Defendants are entitled to qualified immunity.

## C. **Municipal Liability**

This court will also grant summary judgment to Defendants for Plaintiff's claim against Defendant Sheriff Rogers in his official capacity. Under Monell v. Department of Social Services, a municipality "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[9] 436 U.S. 658, 690 (1978). The Fourth Circuit has explained that, to state a claim for Monell liability, a plaintiff "must show both that he has suffered a constitutional harm and that the harm was the result of the Department's unconstitutional policy or

_____

[9] While "it may be less likely that a municipality may be found liable when the constitutional terrain was as murky" in the context of qualified immunity, Atkinson, 100 F.4th at 509, this court finds it necessary to analyze Plaintiff's official capacity claim. Construed liberally, Plaintiff has alleged that Sheriff Rogers acted under color of law, (see Compl. (Doc. 2) ¶ 36), and has cited to Monell in support of his claims, (see Pl.'s Resp. (Doc. 29) at 1-3). Mindful that "it is not immediately apparent why the municipal fisc should be burdened in the absence of any ascertainable federal standards by which municipal policies can be gauged," Atkinson, 100 F.4th at 510 (Wilkson, J., concurring), this court finds it necessary to analyze the merits of Plaintiff's claim. See id. at 509 n.8.

- 32 -

custom." English v. Clarke, 90 F.4th 636, 649 (4th Cir. 2024); see also Johnson v. Baltimore Police Dep't, 500 F. Supp. 3d 454, 459 (D. Md. 2020) ("It is axiomatic that a Monell claim cannot lie 'where there is no underlying constitutional violation by the employee.'" (quoting Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001))). While Plaintiff has identified an official policy, see Howard v. City of Durham, 68 F.4th 934, 952 (4th Cir. 2023), Plaintiff has failed to demonstrate that this policy caused a constitutional harm. Therefore, this court will grant summary judgment to Defendants.

Plaintiff contends that the Testing Policy "forced [him] to choose between violating his sincerely held religious beliefs or being fired, imposing a substantial burden on [him] as well as interfering with, and depriving him of, the enjoyment of the religious liberties guaranteed him by the First Amendment of the U.S. Constitution." (Compl. (Doc. 2) at 12–13.) Defendants argue that Plaintiff's Free Exercise claim "fail[s] under both rational basis review and strict scrutiny." (Defs.' Br. (Doc. 17) at 21.) Defendants assert that "the rational basis test applies" because the Testing Policy "was completely content neutral and applied to all full and part-time employees." (Id. at 21–22.) Additionally, "even if the more rigorous strict scrutiny test applie[s]," Defendants argue that preventing

- 33 -

COVID-19 "exposure was an abundantly compelling justification" and the decision to permit "simple testing and masking versus mandatory vaccination demonstrates the narrowly-tailored nature" of the Testing Policy. (Id. at 22–23.)

This court finds that Defendants are entitled to summary judgment on Plaintiff's Free Exercise claim. "To implicate the Free Exercise Clause, state action must burden religious exercise." Kim v. Bd. of Educ. of Howard Cnty., 93 F.4th 733, 747 (4th Cir. 2024). State action can burden religion "in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 525 (2022) (quoting Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 879–81 (1990)). Conversely, actions that incidentally burden religion "are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." Fulton v. City of Philadelphia, 593 U.S. 522, 533 (2021).

This court preliminarily finds that Plaintiff has suffered a burden on his religious exercise. After objecting to the Testing Policy and refusing to test weekly and wear a mask, Plaintiff was terminated from his position at GCSO. Plaintiff

- 34 -

believes that the "Holy Spirit convicted him to refuse to comply with the Policy," (Compl. (Doc. 2) ¶ 13), and Defendants maintain that that "there was no alternative employment option" left to offer Plaintiff, (Defs.' Suppl. Br. (Doc. 25) at 14). As a result, the "employment relationship remains severed." Polk v. Montgomery Cnty. Pub. Sch., No. CV DLB-24-1487, 2025 WL 240996, at *6 (D. Md. Jan. 17, 2025). This separation is sufficient to demonstrate a burden on religious exercise.

However, Defendants have demonstrated that the Testing Policy is both neutral and generally applicable. Government action is not neutral "when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." Fulton, 593 U.S. at 533 (citing Masterpiece Cakeshop v. Colorado C.R. Comm'n, 584 U.S. 617, 636–40 (2018); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533 (1993)). Alternatively, government action is neutral "if it 'has no object that infringes upon or restricts practices because of their religious motivation.'" Kim, 93 F.4th at 748 (cleaned up in original) (emphasis in original) (quoting Alive Church of the Nazarene, Inc. v. Prince William County, 59 F.4th 92, 108 (4th Cir. 2023)) (citing Hines v. S.C. Dep't of Corr., 148 F.3d 353, 357 (4th Cir. 1998) ("A law is considered neutral if it

proscribes conduct without regard to whether that conduct is religiously motivated or not.")).

This court finds that Defendants have not "transgressed this neutrality standard." Fulton, 593 U.S. at 533. From the text of the Testing Policy, the "object" was not to "infringe upon or restrict practices." Church of Lukumi, 508 U.S. at 533. Indeed, the Testing Policy clarified that both medical and religious exemptions were not applicable to the testing requirement, (see Defs.' Pol'y (Doc. 17-1) at 4), and therefore "did not single out religion alone." Does 1-6 v. Mills, 16 F.4th 20, 30 (1st Cir. 2021). While Defendants may have been able to "deny a religious accommodation request even if the employer ha[d] a history of granting that same request as a medical accommodation," see Hall, 155 F.4th at 754 (comparing Title VII to the ADA), the Testing Policy made both religious and secular exemptions "generally not applicable," (Defs.' Pol'y (Doc. 17-1) at 4). Therefore, this court finds that Defendants did not treat a "comparable secular activity more favorably than religious exercise," Tandon v. Newsom, 593 U.S. 61, 62 (2021), and the text of the policy is facially neutral.

Facial neutrality, however, is not determinative. See Church of Lukumi, 508 U.S. at 534. If government action "affects religious practice, even if indirectly, a court must look behind

- 36 -

the law's text to determine if it was enacted 'because of' and not 'in spite of' its effect on religion." <u>Alive Church of the Nazarene</u>, 59 F.4th at 108 (quoting <u>Church of Lukumi</u>, 508 U.S. at 540). Courts may consider contextual statements "surrounding the law's passage, and any deviations from standard decisionmaking procedures." <u>Id.</u> (citing <u>Church of Lukumi</u>, 508 U.S. 541-42). Here, Defendants state that that the Testing Policy "applied equally to all full and part-time employees." (Defs.' Suppl. Br. (Doc. 25) at 21). Defendants explain that Testing Policy was universal because "GCSO depends on a stable and dependable work force, and it is unreasonable . . . [to] hand out temporary furloughs to every employee with a gripe about COVID preventative measures." (Defs.' Reply (Doc. 30) at 5). Thus, the Testing Policy was not motivated by religious animus because "[a]nyone who disagrees with them — for religious, secular, or other reasons — must nevertheless abide by them." <u>Polk</u>, 2025 WL 240996, at *8. Additionally, Plaintiff has failed to provide any contemporaneous statements or actions by Defendants indicating that Defendants targeted religion when creating the Testing Policy. Therefore, this court finds that the Testing Policy is neutral.

The Testing Policy is also generally applicable. Government action is not generally applicable when it "prohibits religious

conduct while permitting secular conduct that undermines the
government's asserted interests in a similar way" or by creating
a "mechanism for individualized exemptions," Fulton, 593 U.S. at
533–34 (quoting Smith, 494 U.S. at 884). To the extent Plaintiff
attempts to prove that the Testing Policy was not generally
applicable through evidence of "another part-time deputy,"
(Pl.'s Resp. (Doc. 29) at 5), this court finds that comparison
insufficient. Plaintiff failed to articulate whether this deputy
was "advised to not work" for religious, medical, or other
reasons. (Id.) Plaintiff did not establish whether this deputy
sought an exemption, or whether he was "away from work" because
he was placed on leave, resigned, or was terminated from
employment. (Id.) Plaintiff additionally does not state
Defendants' reason for advising the deputy not to work, and
whether the deputy being "not absolutely needed to work" was due
to staffing, medical, or other reasons. (Id.)

Therefore, this court determines that by prohibiting
exemptions to the Testing Policy, Defendants "ma[de] no
distinction between religious and secular." Kim, 93 F.4th at
748. The Testing Policy neither vested, see id., nor invited,
see Fulton, 593 U.S. at 533, Defendants to exempt certain

conduct. Without practices to the contrary, this court finds
that the Testing Policy was generally applicable.[10]

When government action is neutral and generally applicable,
courts subject the action to rational basis review. See Jesus
Christ is the Answer Ministries, Inc. v. Baltimore City, 915
F.3d 256, 265 (4th Cir. 2019), as amended (Feb. 25, 2019). This
standard of review "is quite differential" and "simply requires
courts to determine whether the classification in question is,
at a minimum, rationally related to legitimate governmental
goals." Wilkins v. Gaddy, 734 F.3d 344, 347–48 (4th Cir. 2013).

---

[10] Even if Plaintiff had established that strict scrutiny applies,
Defendants have demonstrated that the Testing Policy
was narrowly tailored to serve a compelling state interest.
Church of Lukumi, 508 U.S. at 546. The Supreme Court has stated
that "[s]temming the spread of COVID-19 is unquestionably a
compelling interest." Diocese of Brooklyn, 592 U.S. at 18.
Moreover, in the context of vaccination policies for
governmental entities, "narrow tailoring requires the town to
show that measures less restrictive of religion could not
address its interest in reducing the spread of COVID." Lumley,
2024 WL 3678348, at *8. The Testing Policy permitted employees
to refuse vaccination. Those who refused vaccination were
required to wear a mask and test weekly. Unlike cases where
governmental entities defended a vaccination requirement by
"citing various cases holding that testing, PPE, and other
precautions did not adequately serve a government actor's
interest in preserving public health against COVID," see id.
(collecting cases), Defendants have already incorporated an
accommodation into the policy itself. Therefore, the Testing
Policy both served a compelling interest and was narrowly
tailored.

This court finds that the Testing Policy is rationally related to the legitimate government interest of preventing the transmission of COVID-19 to both the workplace and the public. Defendants identified this purpose in its Testing Policy, stating that GCSO is "committed to promoting and providing a safe workplace to all employees." (Defs.' Pol'y (Doc. 17-1) at 1.) Additionally, the Testing Policy "largely adopt[s] the guidelines previously promulgated by Guilford County Human Resources" and "shall apply to all full and part-time employees." (Id.) Courts considering employer vaccination requirements have "easily conclude[d] that such a rational relationship exists" because "vaccines are a safe and effective way to prevent the spread of COVID-19." Smith v. Biden, No. 1:21-CV-19457, 2021 WL 5195688, at *7 (D.N.J. Nov. 8, 2021), appeal dismissed as moot sub nom. Smith v. President United States, No. 21-3091, 2023 WL 5120321 (3d Cir. Aug. 10, 2023). This court agrees that "preventing the spread of COVID-19 is a legitimate government interest," Menk v. MITRE Corp., 713 F. Supp. 3d 113, 176 (D. Md. 2024), and requiring either vaccinations or weekly testing and masking in lieu of vaccination is rationally related to such interest. Therefore, this court finds that Defendants are entitled to summary judgment on Plaintiff's claim against Sheriff Rogers in his

- 40 -

official capacity because Plaintiff has failed to show that he has suffered a constitutional harm. English, 90 F.4th at 649.

### D.    **Voluntary Withdrawal**

This court will consider and ultimately deny Plaintiff's request for voluntary dismissal without prejudice, (see Pl.'s Resp. (Doc. 29) at 7). Responding to Defendants' motion, Plaintiff concluded by stating that he "moves for Voluntary Dismissal without Prejudice of this action against all defendants under the condition that the Court would grant me one (1) year from the date of the entry of the Court's order to refile my action against all defendants." (Id. (emphasis in original).) Plaintiff "assert[s] that the time and circumstances for proceeding with my action may not be entirely ripe," contending that "the availability of greater information as well as the clarity provided by rulings in existing cases over the coming year may make it efficacious for me to pursue this action at a later date." (Id.)

Defendants "strenuously oppose" Plaintiff's motion on procedural and substantive grounds. (Defs.' Reply (Doc. 30) at 6.) Procedurally, Defendants argue that the motion is "wholly defective as it violates Local Rule 7.3" because the motion was not filed as a separate document and instead was "tucked, almost as an afterthought, into this Response." (Id.) Substantively,

Defendants argue that Plaintiff failed to articulate a legitimate basis for leave and dismissal without prejudice "would prejudice Defendants who have invested significant time in briefing this matter." (Id. at 6-7.)

This court agrees with Defendants as a matter of procedure that Plaintiff failed to follow the requirements of Local Rule 7.3. This rule requires that "[a]ll motions . . . shall be in writing and shall be accompanied by a brief . . . . Each motion shall be set out in a separate document." LR 7.3(a). Plaintiff did not include a separate motion with his response. While Plaintiff's failure to follow the rules is apparent, this court will consider Plaintiff's request given that he is proceeding without counsel and is not held to the same standards as an attorney. See Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980).

Considering the merits, this court will deny Plaintiff's motion and grant summary judgment to Defendants. Pursuant to Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Motions to dismiss under Rule 41(a) are "a matter for the discretion of the district court." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). Such motions "should not be denied absent plain legal prejudice to the defendant." Gross v.

Spies, 133 F.3d 914 (4th Cir. 1998). When applying this plain legal prejudice standard, courts must consider:

> (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending.

Id. This court will deny Plaintiff's motion because all four factors support plain legal prejudice.

First, this court agrees that Defendants "have invested significant time in briefing this matter for dismissal under both Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure." (Defs.' Reply (Doc. 30) at 7.) Defendants have filed an answer to Plaintiff's complaint, (see Defs.' Answer (Doc. 19)), a motion to dismiss and brief in support, (see Defs.' Mot. to Dismiss (Doc. 16); Defs.' Br. (Doc. 17)), and an objection to Plaintiff's Notice of Intent to Proceed, (Pl.'s Notice of Intent to Proceed (Doc. 22); Defs.' Obj. to Pl's Req. for an Extension of Time ("Defs.' Obj.") (Doc. 23)). Defendants cite Local Rule 7.3 as a basis for the objection, (Defs.' Obj. (Doc. 23) at 3), thus informing Plaintiff of the requirements for filing with this court. Following the Magistrate Judge's order stating the intent to treat the motion to dismiss as one for summary judgment, (Order (Doc. 24)), Defendants filed supplemental briefing supporting summary judgment and provided affidavits

- 43 -

from Sheriff Rogers, Captain Pruitt, and Legal Advisor Secor, (see Doc. 26; 27; 28). Following Plaintiff's response, (Pl.'s Resp. (Doc. 29)), Defendants replied with additional briefing, (Defs.' Reply (Doc. 30)). The facts and circumstances of this case reveal that Defendants not only spent significant time briefing but also expended effort holding litigants accountable. Therefore, the first factor weighs in favor of Defendants.

The second factor also weighs in favor of Defendants. While Plaintiff is proceeding without counsel, this case was previously stayed for failure to pay a filing fee. (Order (Doc. 4).) The Magistrate Judge had to remind Plaintiff of his service obligations, (Order (Doc. 8)), and response requirements, (Order (Doc. 21)). Then, after Plaintiff stated that he "was not 'warned' of [his] need to respond to Defendants' Motion to Dismiss," (Pl.'s Notice of Intent to Proceed (Doc. 22) at 1) (quoting Order (Doc. 21) at 1), the Magistrate Judge extended the response deadline, (Order (Doc. 24) at 2). Plaintiff's response was then filed after the extended deadline. (See Pl.'s Resp. (Doc. 29).) This court finds that Plaintiff has caused delays throughout this case.

This court also finds that Plaintiff acted without diligence in filing his response. As stated above, Defendants cited Local Rule 7.3 when objecting to Plaintiff's Notice of

- 44 -

Intent to Proceed. (Defs.' Obj. (Doc. 23) at 3.) While this court recognizes that the challenges of proceeding without counsel, "pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994). Having previously been made aware of the rule by the opposing party, Plaintiff's failure to abide by the rules of this court reveals at minimum a lack of diligence by Plaintiff.

The third factor supports denying Plaintiff's motion. Plaintiff contends that "the availability of greater information as well as clarify provided by rulings in existing cases over the coming year may make it efficacious for me to pursue this action at a later date." (Pl.'s Resp. (Doc. 29) at 7.) This court recognizes that it is "well established that, for the purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit" and "the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation will not serve to bar a second suit." Davis v. USX Corp., 819 F.2d 1270, 1274-75 (4th Cir. 1987). However, it is also "settled that a plaintiff may not obtain a non-prejudicial voluntary dismissal simply to circumvent adverse rulings." Teck Gen. P'ship v. Crown Cent. Petroleum Corp., 28 F. Supp. 2d 989, 992 (E.D. Va. 1998) (citing

- 45 -

Paturzo v. Home Life Ins. Co., 503 F.2d 333, 336 (4th Cir. 1974)). Given Plaintiff's admission that the "circumstances for proceeding with my action may not be entirely ripe," (Pl.'s Resp. (Doc. 29) at 7), this court finds that Plaintiff's request more closely resembles an attempt to avoid an adverse ruling than to gain an advantage in litigation. Plaintiff made this request after Defendants had filed a brief in support of dismissal with ten exhibits, (Defs.' Br. (Doc. 17)), which had been converted into one for summary judgment, (Order (Doc. 21)), and an answer to Plaintiff's complaint, (Defs.' Answer (Doc. 19)). Plaintiff is not, as in Davis, attempting to transfer litigation to state court "to resolve a difficult question of state law." Davis, 819 F.2d at 1275. Rather, it appears that Plaintiff recognized the need for "greater information as well as . . . clarity" to support his claims. (Pl.'s Resp. (Doc. 29) at 7.) By receiving Defendants' briefs, the Magistrate Judge's orders, and permission to refile within a year, Plaintiff would gain the benefits of tested theories and identified shortcomings at the expense of Defendants' resources. Therefore, the third factor weighs in favor of denying Plaintiff's motion.

The final factor also weighs in favor of denying Plaintiff's motion. Given the Magistrate Judge's order, (Order (Doc. 24)), and the responses by the parties, this court is

- 46 -

treating Defendants' motion as one for summary judgment. Plaintiff did not object to this order in his intent to proceed, (see Pl.'s Notice of Intent to Proceed (Doc. 22)), and he did not request a voluntary dismissal until his response, (see Pl.'s Resp. (Doc. 29) at 7). Because Plaintiff's request concluded his last opportunity to be heard before summary judgment, the fourth factor weighs in favor of Defendants. Therefore, based on the totality of the circumstances, this court will deny Plaintiff's motion for voluntary dismissal and grant summary judgment to Defendants.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 16), is converted into a Motion for Summary Judgment and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Voluntary Dismissal Without Prejudice, (Doc. 29), is **DENIED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE.**

A judgment dismissing this action will be filed contemporaneously herewith.

This the 19th day of December, 2025.

_____
United States District Judge

- 47 -